IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLU SHOTS OF TEXAS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-cv-144-O |
| | § | |
| MICHAEL LOPEZ et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Judgment on the Pleadings (ECF No. 52), filed December 20, 2013. Having considered the motion, response, reply, pleadings, record, and applicable law, the Court concludes that Defendants' motion should be granted for the reasons stated below.

**I.     Factual and Procedural Background**

This is an action by Flu Shots of Texas, Inc. ("Flu Shots" or "Plaintiff") against Defendants Michael Lopez, Chareese Lopez, Flu Shots of Colorado, LLC, and B12 Shots of Colorado LLC, arising from Defendants' alleged use of Plaintiff's trademarks TO BEAT THE FLU, WE COME TO YOU and FLU SHOTS OF AMERICA TO BEAT THE FLU, WE COME TO YOU. Plaintiff brings claims for federal trademark infringement, 15 U.S.C. § 1114 (Count I); federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); federal trademark dilution under 15 U.S.C. § 1125(c) (Count III); common law trademark infringement (Count IV); violation

1

of the Texas Theft Civil Liability Act (Count V); common law fraudulent inducement (Count VI); common law fraud and fraudulent misrepresentation (Count VII); breach of contract (Count VIII); violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count IX); and negligent misrepresentation (Count X). Plaintiff alleges the Court has federal question jurisdiction and diversity jurisdiction, as well as supplemental jurisdiction under 28 U.S.C. § 1367 over its state law claims. First Am. Compl. ¶¶6–8, ECF No. 22.

Plaintiff makes the following allegations in support of its claims.[1] Plaintiff Flu Shots, a mobile wellness shot business, is an entity that was formed by Jeffrey Vitt ("Vitt") in or around November 2002. *Id.* ¶ 11. Plaintiff's claims arise out of a failed business relationship with Defendants involving the provision of flu shots, and later B12 vitamin shots, to customers in the convenience of their homes or businesses. *Id.* ¶¶ 11-24. Plaintiff developed the proprietary business model for this venture, promoting it with the federally registered marks, TO BEAT THE FLU, WE COME TO YOU, Registration No. 4,345,111 ("Mark I"), and "FLU SHOTS OF AMERICA" ("Mark II") (sometimes collectively, the "Flu Shot Marks"). *Id.* ¶ 10. Plaintiff was the owner of the Flu Shot Marks used in Texas and other states in the operation of the mobile wellness shot business. *Id.*

In 2003, Vitt and Defendant Michael Lopez ("Lopez"), who lives in Colorado, discussed jointly forming a business to expand Vitt's wellness shot business into Colorado. *Id.* ¶ 12. Vitt and Lopez entered into an agreement under which Lopez would pay Vitt certain costs associated with

---

[1]When deciding a Rule 12(c) motion for judgment on the pleadings, the court applies the same standard as a Rule 12(b)(6) motion to dismiss, accepting as true all well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

the venture, plus ten percent of the net revenue.  *Id.*  For several years, nothing came of the agreement.  *Id.*  Subsequently, through Vitt's marketing efforts, Flu Shots' business expanded, its website was redesigned, and in 2005 it began using the tag line "To Beat the Flu We Come to You." *Id.* ¶ 13.  Between 2005 and 2006, Vitt acquired a client with wellness immunization needs in Colorado.  *Id.* ¶ 14.  In January 2006, Vitt and Lopez discussed the possibility of a renewed Colorado venture to service Plaintiff's national client and grow the wellness shot business in Colorado.  *Id.* ¶ 14. Following successful contract negotiations between Vitt and Lopez in 2006, Defendants sought and obtained rights to the business model, website design, and associated marks for a period extending from approximately 2006 to 2011.  *Id.* ¶¶ 16-24.  During this time, Vitt and/or Flu Shots provided Lopez with approximately $16,000 worth of immunization supplies.  *Id.* ¶ 20.  On numerous occasions, Defendants refused to pay the invoices in full, paid late, or requested substantial reductions to the agreed upon and invoiced fees.  *Id.*

In February 2011, prior to terminating the agreement and in breach of its non-compete provisions, Defendants Michael and Chareese Lopez formed Defendant B12 Shots of Colorado, LLC.  *Id.* ¶ 25.  When Defendants terminated the agreement on April 6, 2011, Flu Shots complains that Defendants continued the business, in essence, by absconding with Flu Shots' proprietary business model, including the Flu Shot Marks, and by purchasing and cybersquatting the domain name "www.tobeatthefluwecometoyou.com."  *Id.* ¶¶ 23-24, 26-27.  Plaintiff seeks monetary and injunctive relief, as well as its costs and attorney's fees.  *Id.*, Prayer for Relief.

On April 26, 2013, Defendants filed a motion to dismiss the original complaint.  Def. Mot. to Dismiss, ECF No. 13.  Instead of filing a response, on May 20, 2013, Plaintiff filed a First Amended Complaint.  First Am. Compl., ECF No. 22.  Defendants moved to strike the First

Amended Complaint, which the Court denied. Order, ECF No. 39. In light of its decision to allow the First Amended Complaint, the Court denied as moot Defendants' initial motion to dismiss. *See id.* On June 4, 2013, Defendants filed their answer and affirmative defenses to Plaintiff's First Amended Complaint, asserting counterclaims for fraudulent inducement, negligent misrepresentation, and breach of contract. Def. Ans. & Countercl., ECF No. 29.

On June 28, 2013, the Court issued a Scheduling Order setting this case on the Court's four-week trial docket commencing May 12, 2014. Sch. Ord., ECF No. 38. Pursuant to the Scheduling Order, the deadline to amend pleadings and join additional parties was August 27, 2013. *Id.* ¶ 2.[2] On August 27, 2013, Flu Shots sought leave of Court to add claims for business disparagement and tortious interference based on alleged personal communications which took place between Vitt and Lopez after the lawsuit was filed. Mot. for Leave to File Pl. Sec. Am. Compl., ECF No. 43. On October 25, 2013, the Court granted Flu Shots leave to amend, and directed Flu Shots to file the Second Amended Complaint no later than October 27, 2013. *See* Oct. 25, 2013 Order, ECF No. 49 ("[I]t is ordered that Flu Shots shall file its Second Amended Complaint on or before October 27, 2013."). Notwithstanding the passage of five months, Flu Shots has not filed the Second Amended Complaint.

On December 20, 2013, Defendants filed their motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of Counts I through IV and Counts VI through X of the First Amended Complaint. Defendants argue that Flu Shots' trademark-based claims related to Mark

---

[2]On November 27, 2013, the Court issued an order amending the remaining deadlines in its Scheduling Order. *See* Order, ECF No. 51. As the deadline to amend pleadings and join parties had already passed, the Court's order did not include an extension of the August 27, 2013 deadline. Further, neither party requested an extension of expired deadlines.

4

I (Counts I, III, IV and IX) should be dismissed because Flu Shots does not have standing to bring these claims, and that Flu Shots' trademark-based claim related to Mark II (pleaded as part of Count I) should be dismissed for failure to state a claim since Mark II is not a registered mark. Defendants argue that Flu Shots' Section 43(a) claim (Count II) should be dismissed for failure to join a necessary party. Further, Defendants argue that Flu Shots' breach of contract claim (Count VIII) should be dismissed for lack of standing, since Flu Shots has failed to allege it was a party to any contract with Defendants. With regard to Flu Shots' claims for fraudulent inducement (Count VI), fraud and fraudulent misrepresentation (Count VII), and negligent misrepresentation (Count X), Defendants argue that dismissal is required for failure to state a valid claim and, alternatively, for failure to plead fraud with the requisite specificity under Fed. R. Civ. P. 9(b).

Flu Shots opposes the motion, and as part of its response seeks leave to amend to file a Second Amended Complaint to add two new plaintiffs, one new defendant and three new causes of action. Pl. Mot. for Leave to Amend, Ex. B1 to Plaintiff's Response, ECF No. 57-1. Defendants oppose Flu Shots' motion for leave to amend as untimely, pointing out that the deadline for amendment of pleadings and joinder of parties was August 27, 2013. Def. Reply at 9-10, ECF No. 59. Defendants further argue that allowing leave to amend at this juncture would be unduly prejudicial, as the Court has already allowed leave to amend twice, mooting Defendants' initial motion to dismiss, and that Plaintiff, without explanation, failed to file its Second Amended Complaint, notwithstanding a Court order directing such filing no later than October 27, 2013. *See id.*

Defendants' motion for judgment on the pleadings and Plaintiff's request for leave to amend have been fully briefed and are ripe for adjudication. The Court will consider the motions together, as the issues presented have significant overlap.

## II.    Legal Standard for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) permits a court to dispose of a case "where the material facts are not in dispute and judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). A motion for judgment on the pleadings under Rule 12(c) follows the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Gentilello v. Rege*, 627 F.3d 540, 543-33 (5th Cir. 2010); *In re Katrina Canal Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

6

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* However, the Court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

## III.    Analysis

### A.    Counts I, III, IV and IX (Plaintiff's Trademark-Based Claims)

The Court first addresses Defendants' argument that, with regard to Mark I, Flu Shots' trademark-based claims should be dismissed for lack of standing.[3] Specifically, Defendants contend that Flu Shots has failed to state a plausible claim that it is the registered owner of Mark I. Absent ownership, Defendants contend that Flu Shots lacks standing to pursue its federal trademark infringement claims (Counts I and III), its common law trademark infringement claim (Count IV), and its claims under the Anti-Cybersquatting Consumer Protection Act ("ACPA") (Count IX). *See* Def. Mot. at 6-7, ECF No. 52; Def. Reply 4-6, ECF No. 59. As to Mark II, Defendants argue that dismissal is required since Mark II is not a registered mark. Def. Mot. at 8, ECF No. 52. In

---

[3]When making a ruling on a motion to dismiss that implicates the Court's subject matter jurisdiction, such as a motion to dismiss based on lack of standing, the Court is authorized to consider evidence beyond the complaint and to make appropriate factual determinations. *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 741 (5th Cir. 1986).

response, Flu Shots contends that Defendants' motion is "meritless," and alternatively seeks leave to amend the pleadings to cure any deficiencies.  Pl. Resp. at 1, ECF No. 56.  Flu Shots also attaches Jeffrey Vitt's Declaration, where, in contradiction of the live pleading, he states that Flu Shots never owned Mark I, but instead is a licensee or assignee of the mark.  *See* Ex. A to Pl. Resp., Declaration of Jeffrey A. Vitt ("Vitt Decl."), ECF No. 57-1.  For the reasons that follow, the Court agrees with Defendants that Flu Shots: (i) lacks standing to bring its  trademark-based claims asserted in Counts I, III, IV, and IX with regard to Mark I; (ii) has failed to state a claim of infringement in Count I with regard to Mark II; and (iii) has failed to show good cause to amend the pleadings and join additional parties.

1.     *Applicable Law*

To succeed on its federal and common law trademark infringement claims (Counts I, III, and IV), as well as its claims under the ACPA (Count IX), Flu Shots must first establish ownership of the Flu Shot Marks.  Section 1114 of Title 15 states that "[a]ny person who shall, without the consent of the registrant [violate subsection (a) or (b) of that section], shall be liable in a civil action *by the registrant* for the remedies hereinafter provided."  15 U.S.C. § 1114 (emphasis added).  Section 1125(c) of Title 15 provides that the: "*owner* of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark . . . if such use begins after the mark has become famous and causes dilution . . . ."  (emphasis added).  *See generally TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (to succeed on a trademark infringement claim, a plaintiff must first show ownership of a legally protected mark, and it must then establish infringement)).  Similarly, to succeed on a claim for cybersquatting under the ACPA,

8

a plaintiff must show ownership of the mark. *See* 15 U.S.C. § 1125(d)(1)(A) (cybersquatting claim may only be brought by "the owner of the mark").

Registration with the United States Patent and Trademark Office ("USPTO") constitutes prima facie evidence of the validity of the mark and the registrant's exclusive right to use the mark for the services specified in the registration. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998); 15 U.S.C. § 1115(a).

       2.     *Discussion*

Counts I, III and IV of Plaintiff's First Amended Complaint embrace claims that Defendants have infringed upon the Flu Shot Marks. Count IX alleges that Defendants' use and purchase of the domain name www.tobeattheﬂuwecometoyou.com is an unauthorized commercial use of Plaintiff's intellectual property and Mark I, in violation of the ACPA, 15 U.S.C. § 1125(d).

       a.     *Mark I*

Defendants have provided the Court with the USPTO registration records concerning Mark I, and ask the Court to take judicial notice that the records show "Vitt IP Holdings, LLC" as the owner of record. *See* Appendix in Support of Def. Mot. ("Def. App.") at 3-21 (USPTO records registering Mark I to Vitt IP Holdings, LLC). The Court grants Defendants' request to take judicial notice of evidence from the USPTO of registration under Federal Rule of Evidence 201. *See generally Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (the district court looks to the substance of the pleadings and any judicially noticed facts) (internal punctuation and citations omitted); *see also Choice Hotels Int'l, Inc. v. Goldmark Hospitality, LLC*, 2014 WL 642731, at *3 n.4 (Feb. 19, 2014) (Fitzwater, C.J.) (citing *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1029 n.1 (C.D. Cal. 2010) (taking judicial notice of

9

trademark registration)).  In addition to the USPTO filings showing Vitt IP Holdings, LLC as the owner of Mark I, the Court notes that in prior proposed pleadings filed with the Court, Plaintiff states that Vitt IP Holdings, LLC is the owner of Mark I.  *See* Proposed Sec. Am. Compl ¶ 10 (ECF No. 43-1), attached as Ex. A to Flu Shots' August 27, 2013 Motion for Leave to Amend its First Amended Complaint, ECF No. 43  ("Through an entity called Vitt IP Holdings, LLC, Plaintiff's federal trademark application was approved on or about June 4, 2013.").

In response to Defendants' argument that Flu Shots lacks standing to bring its trademark-based claims, and in contradiction to the live pleadings, Plaintiff now seeks to argue that it has standing as the licensee or assignee of Mark I.  *See* Pl. Resp. at 2 (Flu Shots "is the licensee of Plaintiff Vitt IP Holdings, LLC . . ., the entity that registered the mark in question and attempted to assign the mark" to Flu Shots.).  In support of this new argument, Flu Shots relies on Vitt's Declaration, where Vitt states that Flu Shots never owned the federal registration of Mark I, but instead is a licensee or assignee of Vitt IP Holdings.  *See* Ex. A to Pl. Resp., Vitt Decl., ECF No. 57-1.  Problematically, these assertions are contained in a declaration submitted by Flu Shots in response to Defendants' motion, are not alleged in the First Amended Complaint, and, in fact, contradict the allegations in the live pleadings.  For this reason alone, the Court may disregard the Vitt Declaration under principles of judicial estoppel.  *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (judicial estoppel protects integrity of courts by "preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.") (internal punctuation and citation omitted).  Even if true, however, the Vitt Declaration does not establish the prerequisite for a proper assignment, that is, a written document memorializing the transfer of ownership.  *See Multimin USA, Inc. v. Walco Int'l, Inc.*, 2007 WL 1686511, at *3 (N.D. Tex. June 8, 2007)

(McBryde, J.) ("A registered mark . . . shall be assignable with the good will of the business in which the mark is used [and such] [a]ssignments shall be by instruments in writing duly executed.") (citing 15 U.S.C. § 1060(a)).  Moreover, to the extent Plaintiff asserts it is a licensee of the mark, licensees do not have standing to assert federal trademark infringement claims, and any assignment must be an absolute assignment of all trademark rights to confer standing to someone other than the registrant.  *See ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 599 (5th Cir. 2003) ("Because [plaintiff] is not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under the Dilution Act . . ."); *Multimin USA, Inc.*, 2007 WL 1686511, at *2-3 ("For a transfer of rights in a trademark to constitute an assignment, thereby vesting title to the trademark in a party, the transfer must be absolute and must relate to the entire rights in the trademark.") (citation omitted).  In short, Flu Shots has failed to adequately plead or establish that it has been granted an absolute assignment of all trademark rights, rather than a partial assignment or merely a license, or that any such assignment was in writing.  Absent ownership of Mark I, the Court concludes that Flu Shots lacks standing to assert its federal trademark infringement claims (Counts I, III and IV), as well as its claim under the ACPA (Count IX), 15 U.S.C. § 1125(d) (cybersquatting claim may only be brought by "the owner of the mark").

For the same reasons, the Court finds that Plaintiff lacks standing to bring Count IV (common law trademark infringement).  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.") (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.— Austin 2001, pet. denied) (internal

punctuation and citation omitted)).  Accordingly, as Plaintiff is not the owner of Mark I, Count IV is similarly dismissed for lack of standing.

*b.*  *Mark II*

With regard to Mark II, there is no dispute the mark is not registered.  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice that the USPTO has suspended the application for registration of the mark pending the outcome of this lawsuit.  *See* Def. App. at 13, 16-17 (USPTO Records).  As already stated, to bring a valid claim for federal trademark infringement under 15 U.S.C. § 1114, as well as under common law, the asserted mark must be a registered mark.  Because Mark II is not a registered mark, insofar as Plaintiff alleges that Defendants infringed Mark II, the Court will dismiss Count I for failure to state a claim.

### B.    Count II (Plaintiff's Section 43(a) Lanham Act Claim – Unfair Competition)

Defendants argue that Count II must be dismissed as legally insufficient under Fed. R. Civ. P. 19, since Plaintiff has failed to join the owner of the mark, Vitt IP Holdings, and the deadline for amending pleadings and joinder of parties was August 27, 2013.  Def. Mot. at 12, ECF No. 52; Def. Reply at 6, 9-10, ECF No. 59.  In response, Plaintiff argues that Defendants' motion has no merit or, alternatively, that joinder of Vitt IP Holdings should be allowed, notwithstanding that the deadline to amend pleadings and join parties expired over seven months ago.  Pl. Resp. at 9, ECF No. 58.

Under Section 43(a) of the Lanham Act, standing is conferred more broadly than under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(c).  Specifically, Section 43(a) of the Lanham Act confers standing on any person who "believes that he or she is or is likely to be damaged by" a violation of the provisions of  15 U.S.C. § 1125(a).  Section 1125(a) "creates two distinct bases of liability: false

12

association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark International v. Static Control Components*, ___ U.S. ___, 2014 WL 1168967, at *4 (March 25, 2014). Although not entirely clear from the face of the pleadings, Flu Shots appears to allege false association and false advertising. *See* First Am. Compl. ¶¶ 30, 31, 35, 36.

Nonetheless, whatever legal interest Plaintiff may have in Mark I, and however those interest may fall within the protection of the Lanham Act, those interests may only be properly prosecuted upon joinder of Mark I's owner as a necessary and indispensable party under Fed. R. Civ. P. 19. *See, e.g., Escamilla v. M2 Technology, Inc.*, 536 Fed. Appx. 417, 421 (5th Cir. July 16, 2013) (dismissing section 43(a) Lanham Act case brought by sole shareholder of corporate owner, since corporate owner of trademark was indispensable party to Lanham Act § 43(a) case); *Association of Co-op Members, Inc. v. Farmland Industries, Inc.*, 684 F.2d 1134, 1143 (5th Cir. 1982) (trademark owner or licensor of mark that is subject of infringement action is usually treated as necessary and indispensable party since "a judgment for the alleged infringer, whether based on a finding that the licensed mark is not a valid trademark or that the defendant's mark does not infringe it, may prejudice the owner's rights in his own mark" and "[a] judgment for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue."); *see generally* 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4th ed. 2001) (collecting cases) (noting that licensor or trademark owner may be indispensable party).

Plaintiff has failed to join Vitt IP Holdings, LLC, the owner of Mark I, and its current Motion to Amend the Complaint is untimely. Accordingly, the Court grants Defendants' motion to dismiss Count II for failure to join a necessary and indispensable party, and denies Plaintiff's alternative request for leave to amend. As already stated, the deadline to amend pleadings and join parties was

August 27, 2013. *See* Sch. Ord. ¶ 2, ECF No. 38. Given Plaintiff's prior amendments to the pleadings, its unexplained failure to file its Second Amended Complaint by October 27, 2013, in contravention of the Court's directive (*see* October 25, 2013 Order, ECF No. 49), and recent request to amend now, and only in response to Defendants' second motion to dismiss, the Court determines that further amendment would be unduly prejudicial and will not be allowed. Further, in addition to ignoring the Court's October 25, 2013 Order, Flu Shots makes no attempt to show good cause for amending the Scheduling Order, as required by Fed. R. Civ. P. 16(b)(4) and the terms of the Court's Scheduling Order. *See* Sch. Ord. ¶ 12, ECF No. 38 (requiring "good cause" and "leave of court" for modifications of Scheduling Order). Instead, Flu Shot bases its current request for amendment on Fed. R. Civ. P. 15(a)(2), which does not apply in this instance, as the deadline for amendment and joinder has expired. *See, e.g., Wachovia Bank Nat. Ass'n*, 2010 WL 2671316, at *2-3 (N.D. Tex. June 30, 2010) (denying leave to amend where party seeking amendment fails to address "good cause" or the court's four-pronged test for amendment, namely: (1) the explanation for failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice of allowing the amendment; and (4) the availability of a continuance to cure such prejudice.").

Alternatively, to the extent Plaintiff seeks to bring a claim for false advertising under § 43(a) of the Lanham Act, Plaintiff has failed to adequately plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark International*, ___ U.S. ___, 2014 WL 1168967, at *14. Plaintiff has failed to allege communications by Defendants that qualify as "commercial advertising or promotion" under 15 U.S.C. § 1125(a)(1)(B). Accordingly, the Court concludes that Plaintiff does not "come within the

zone of interests in a suit for false advertising under § 1125(a)" and hereby dismisses Count II for

lack of standing under § 43(a) of th Lanham Act. *See id.* at *9.[4]

### C.      Count VIII (Breach of Contract)

Defendants argue that Flu Shots lacks standing to bring Count VIII alleging breach of

contract, as Flu Shots has not alleged that it is a party to the contracts at issue.   In response, Plaintiff

asserts that the reference to "Vitt" entering into contracts with Lopez in the pleadings should be

construed as a reference to "Flu Shots," acting by and through Vitt as its President and Chief

Executive Officer.   Resp. at 11, ECF No. 56.   The Court agrees with Defendants that construing the

pleadings as Plaintiff proposes is contradictory to the pleadings and the alleged agreements

themselves.   *See* Def Reply at 6, ECF No. 59.

There is no allegation that the contracts about which Plaintiff complains included any party

other than Vitt, acting on his personal behalf.   The First Amended Complaint provides that Vitt

entered into negotiations and agreements with Lopez.   *See* Pl. First Am. Compl. ¶¶ 12, 16, ECF No.

22.   Further, the 2003 agreement provides: "I, Michael Lopez, will pay 10% of revenue to Jeff Vitt

. . . This is a business opportunity that Jeff Vitt shared with Michael Lopez."   *See* Pl. App. to its

Resp. to Def. Mot. to Dismiss & Transfer Venue, ECF No. 24, at 9.   The 2006 agreement refers to

"Mike Lopez Responsibilities" as well as "Jeff Vitt's responsibilities."   *See id.* at 9-11.   Flu Shots

---

[4]While Defendants have not moved to dismiss Count II on this ground, the Court *sua sponte* considers whether it has statutory or constitutional power to adjudicate this federal cause of action in light of the Supreme Court's recent unanimous decision resolving a split in the circuit courts as to the proper test to determine standing in a false advertising case. *See Lexmark International v. Static Control Components*, ___ U.S. ___, 2014 WL 1168967, at *14 (March 25, 2014) (resolving split among the circuits, and holding that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.").

of Texas is not referenced in either agreement.  As Flu Shots is not a party to either contract referenced in the pleadings, the Court dismisses Count VIII for lack of standing.  *See Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App.—Tyler, 2008, no pet.) (under Texas law, "only the parties to a contract have the right to complain of a breach thereof.").

### D.      Counts VI, VII and X (Plaintiff's Fraud-Based Claims)

Defendants argue that Flu Shots' fraudulent inducement claim (Count VI), fraud and fraudulent misrepresentation claims (Count VII), and negligent misrepresentation claim (Count X) should be dismissed for failure to state a claim and, alternatively, for failure to satisfy Fed. R. Civ. P. 9(b).  Def. Mot. at 9-14, ECF No. 52; Def. Reply at 7-9, ECF No. 59.  In response, Flu Shots contends that its fraud allegations meet the standard for pleading fraud under Rule 9(b), and that the pleading standard should be relaxed in this instance as the facts related to the alleged fraud are peculiarly within the tortfeasor's knowledge.  Resp. at 12-17, ECF No. 56.  For the reasons stated below, the Court agrees with Defendants that Counts VI, VII and X should be dismissed.

#### 1.      *Applicable Law*

The elements of a claim for fraud and fraudulent misrepresentation under Texas law are: (1) a material misrepresentation; (2) that was false when made; (3) the defendant either knew the representation was false or asserted it without knowledge of its truth; (4) the defendant intended that the representation be acted upon; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result.  *Malacara v. Garber*, 353 F.3d 393, 403-04 (5th Cir. 2003) (citing *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)); *see also Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (setting forth elements of fraud claim).

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*,112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

2.    *Discussion*

In Count VI, Flu Shots contends it was fraudulently induced to enter into the contracts it asserts in this lawsuit. First Am. Compl. ¶ 51. Defendants argue that because Flu Shots is not a party to either of the contracts at issue, Count VI must be dismissed for failure to state a claim. The Court agrees.

"Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.'" *Le Tourneau Techs. Drilling*

17

*Sys., Inc. v. Nomac Drilling, LLC*, 676 F. Supp. 2d 534, 542 (S. D. Tex. 2009) (quoting *Haase v.*

*Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).   "In a fraudulent inducement claim[,] the elements of

fraud must be established as they relate to an agreement between the parties."  *Id.* (citing *Haase*, 62

S.W.3d at 798-99).  As stated by the Texas Supreme Court:

> "Texas law has long imposed a duty to abstain from inducing another to enter into
> a contract through use of fraudulent misrepresentations.  Certainly there can be no
> breach of that duty when one is not induced into a contract."  More significantly,
> proof that a party relied to its detriment on an alleged misrepresentation is an
> essential elements of a fraud claim.  Without a binding agreement, there can be no
> detrimental reliance, and thus no fraudulent inducement claim.  That is, *when a party
> has not incurred a contractual obligation, it has not been induced to do anything*.

*Haase*, 62 S.W.3d at 798 (quoting *Formosa Plastics Corp.*, 960 S.W.2d at 46) (emphasis added).

As already found in the context of the Court's dismissal of Flu Shots' breach of contract claim, Flu

Shots is not alleged to be a party to either contract asserted in the pleadings, and Plaintiff's attempt

to interpose Flu Shots as a party through agency principles has been rejected.  *See supra*, sec. III.C.

The Court concludes that under Texas law, because Flu Shots is not alleged to be a signatory or a

party to the contracts asserted in the pleadings, there can be no detrimental reliance, and therefore

no fraudulent inducement claim.  *See, e.g., Haase*, 62 S.W.3d at 798 ("[W]e hold that a plaintiff

cannot assert a fraudulent inducement claim when there is no contract.").  For this reason, the Court

will grant Defendants' motion to dismiss Flu Shots' fraudulent inducement claim (Count VI).

Alternatively, the Court grants Defendants' motion to dismiss Count VI since the First

Amended Complaint fails to allege any fraudulent misrepresentations made by any Defendant *prior

to* the formation of the contracts at issue.  *See* First Am. Compl. ¶¶ 51(1)-51(5) (itemizing alleged

false representations).  That a party cannot claim fraudulent inducement to enter into an agreement

based on representations allegedly made after formation of the contract is evident.

18

As to Count VII alleging fraud and fraudulent misrepresentation, the Court concludes that these claims should similarly be dismissed.  In addition to the alleged statements Plaintiff asserted in support of its fraudulent inducement claim (all of which took place after Vitt and Lopez allegedly entered into an agreement), Plaintiff further alleges that in September 2006, Lopez "agreed not to compete with Plaintiff/Vitt in the immunization services area, however, when taken as a whole, Defendants' previously stated conduct shows a clear intent on the part of Defendants to directly compete with Plaintiff, and a clear intent to deceive Plaintiff regarding Defendants' intent." *See* First Am. Compl. ¶ 58.  Plaintiff further alleges that between 2006 and 2011, Defendants falsely represented they did not have sufficient revenue to pay invoices.  *Id.* ¶ 64.  Plaintiff alleges that Defendant Chareese Lopez terminated the contractual relationship falsely stating Defendants were no longer going to be involved in the wellness shot business, when their actions show otherwise. *Id.*  Plaintiff also alleges that Defendants copied its website for their own use, advertised their business in Texas (contrary to the agreement), and falsely objected to Flu Shots' trademark applications in order that Defendants could continue to compete with Plaintiff.  *Id.* ¶¶ 61, 62, 63. Plaintiff alleges it reasonably relied on Defendants' false representations, and that without them, Plaintiff would not have shared its proprietary business model, confidential trade secrets, and industry contacts, and that it has suffered damages as a result of this detrimental reliance.  *Id.* ¶¶ 65, 66.

Texas law "prohibit[s] tort claims if the parties' relationship and attendant duties arise from a contract."  *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625 (N.D. Tex 2011) (Means, J.); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493-95 (Tex. 1991) (holding that plaintiff cannot recover under tort law "[w]hen the only loss or damage is the subject matter of the

19

contract"). Thus, even assuming that Flu Shots was a party to the contracts at issue, Plaintiff's allegations of Lopez's false statements regarding the non-compete provisions in the agreement is a claim that Defendants did not perform as agreed under the contract, and is not a claim for fraud. *See Sw. Bell Tel. Co.*, 809 S.W.2d at 493-95. Further, Plaintiff fails to allege actions it took in reliance on alleged misrepresentations that it was not otherwise contractually obliged to undertake. Plaintiff fails to adequately allege how any of the alleged misrepresentations constitute misrepresentations of material facts. Plaintiff's allegations of fraud fall short of the specificity required by Rule 9(b). Further, while Plaintiff is correct that the pleading standard under Rule 9(b) is more "relaxed" with regard to pleadings of intent and state of mind, this standard does not apply to any other aspect of a fraud claim.

In sum, Plaintiff's allegations of fraud conjure up speculative allegations on whether Defendants had a possible intention not to honor a contract to which Flu Shots was not even a party. It is axiomatic that allegations of an intention of possibly not intending to perform a contract do not rise to the level necessary to bring a fraud claim.

Further, to the extent Plaintiff attempts to argue that its negligent misrepresentation claim (Count X) does not have to be pled with particularity under Rule 9(b), but that notice pleading under Rule 8(a) suffices, the Court rejects this argument. "[W]hen the parties have not urged a separate focus on the negligent misrepresentation claims," the Fifth Circuit has found negligent misrepresentations claims subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008)

20

(dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)).  As Plaintiff's negligent misrepresentation claim arises out of the same operative facts as its insufficient fraud claim, the Court finds that Plaintiff's negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its fraud claim discussed above. Thus, Defendants' motion to dismiss Count X on the pleadings will be granted.

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based.  *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (while court may dismiss a claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so.").  In this case, Plaintiff has had multiple opportunities to state a claim, including in its original Complaint (ECF No. 1), its First Amended Complaint (ECF No. 22), and its Second Amended Complaint (ECF No. 43-1), which the Court granted Plaintiff leave to file on or before October 27, 2013, but which Plaintiff, without explanation, failed to file. *See* Oct. 25, 2013 Order, ECF No. 49.  Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay.  Further,

Defendants have already incurred the expense of litigating two motions to dismiss, the first denied as moot by the Court, after allowing Plaintiff's request to amend its original pleading.  Subjecting Defendants to a third round of briefing at this juncture would be unduly prejudicial, especially in light of Plaintiff's failure to follow Court orders and failure to make any argument showing good cause to alter the expired deadlines in the Scheduling Order.  Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted as to Plaintiff's fraud-based claims, and dismisses Counts VI, VII and X.

## IV.    Conclusion

Based on the foregoing, the Court **grants** Defendants' Motion for Judgment on the Pleading (ECF No. 52).  Plaintiffs' federal and common law trademark-based claims (Counts I, III, and IV), breach of contract claim (Count VIII), and claim for violations of the ACPA (Count IX) are **dismissed without prejudice** for lack of standing.  Plaintiff's Section 43(a) Lanham Act claim for unfair competition (Count II) is **dismissed without prejudice** for failure to join an indispensable party and for lack of standing.  Plaintiff's fraud-based claims (Counts VI, VII and X) are **dismissed with prejudice** for failure to state a claim.

Remaining in this case are Count V of Plaintiff's First Amended Complaint alleging violations of the Texas Theft Civil Liability Act, as well as Defendants' counterclaims for fraudulent inducement, negligent misrepresentation and breach of contract.

**SO ORDERED** this **3rd day** of **April, 2014**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

22